

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. J. S. Ellingson
General Manager
Texas Prison System
Huntsville, Texas

Dear Sir:     Opinion No. O-3815
              Re: Authority of the Texas Prison
                  System to close certain streets
                  within the City of Huntsville
                  for the purpose of enlarging and
                  remodeling the prison at Hunts-
                  ville.

        This will acknowledge receipt of your letter of
July 25, 1941, requesting the opinion of this department
upon the question hereinafter stated. We quote the body
of your letter in full as follows:

        "The street running in front of the main
    entrance to the prison is Twelfth Street. The
    State owns the land between 11th and 12th Streets,
    extending from Avenue G to Avenue I, or two
    blocks.

        "Plans have been drawn for the improving
    and repairing of the main cell block and ad-
    ministration building, making the approach to the
    prison less hazardous, more practicable and more
    pleasing from an esthetic point of view.

        "The Prison Board, by resolution, requested
    the City Council to close 12th Street from Avenue
    G to Avenue I, and Avenue H from 11th to 12th
    Street. Citizens, however, living east of the
    prison property protested the closing of the street
    and retained a lawyer. They, in turn, would not
    agree to the closing of the street from Avenue G
    to Avenue H but would permit the closing of 12th

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

from Avenue H to Avenue I, provided the
City or Prison System would re-pave 12th
street through the Prison System property
by moving it 75 feet toward 11th street.
This was not agreeable to the Prison
Board and the matter has been in abeyance
ever since.

"The people living east of the prison
property will be discommoded by the closing
of 12th street only to the extent of having
to go south to 11th street, which is one of
the main arteries leading into town and it
is less than 300 feet from 12th to 11th
street. Nine-tenths of the citizens pro-
testing live outside of the city limits and
although we have not counted them, I do not
believe there is more than 50 houses lying
east of the prison property that could
possibly be effected by the closing of 12th
street.

"We would like to know if the Prison
System can legally close 12th street from
Avenue G to Avenue I, or from Avenue H to
Avenue I, and if so, what procedure is
necessary."

The vacating and closing of public streets
and highways is a legislative function which inheres
primarily in the law-making body of the State, and
except as restricted by the Constitution, the State's
power is plenary in this respect over public road-
ways within its borders. 4 McQuillin on Municipal
Corporations, 259, Sec. 1519 (1402).

This power, however, is one which may be
delegated to municipal corporations, counties and
other quasi-municipal agencies. Johnson v. Lancaster
(Civ. App., Austin, 1924), 266 S. W. 565; Simons
v. Galveston, H. & S. A. Ry. Co. (Civ. App., Galveston,
1933) 57 S. W. (2d) 199, error dismissed; Chase v.
Oshkosh, 81 Wis. 313, 51 N. W. 560, 29 A.S.R. 898, 15
L.R.A. 553; 13 R.C.L. 67, Sec. 60.

It is a general rule that cities have such power, and such power only, as is conferred upon them by statute or special charter, and such additional powers as exist by necessary implication from powers granted them by the Legislature. Stevens v. City of Dublin (Civ. App., Fort Worth, 1914) 169 S. W. 188; Vosburg, Mayor, v. McCrary, 77 Tex. 568, 14 S.W. 195; Brenham v. Water Co., 67 Tex. 542, 4 S.W. 143; 1 McQuillin on Municipal Corporations, Sec. 229.

This rule of statutory construction applies also to counties. Edwards County v. Jennings (Civ. App., San Antonio, 1895) 33 S. W. 585, affirmed, 35 S. W. 1053, 89 Tex. 618. Likewise, it is generally held to apply to other subordinate agencies and departments of the State Government. State v. Robison, 30 S. W. (2d) 292, 119 Tex. 302.

It is also generally held that cities have no authority to close streets except as the power to do so has been expressly conferred by statute or special charter. 1 Elliott on Roads and Streets, Sec. 30; 2 Idem. Sec. 1177; 13 R. C. L. 67, Sec. 60; Bowers v. Machir (Civ. App., Fort Worth, 1917) 197 S.W. 758. Authority to vacate and close alleys has been held not to include by implication a similar power with regard to streets. Stevens v. City of Dublin (Civ. App., Fort Worth, 1914) 169 S. W. 188.

Grants of power to other subordinate governmental agencies are usually more strictly construed than are those to incorporated municipalities. Stratton v. Commissioners' Court (Civ. App., San Antonio, 1911) 137 S. W. 1170; 11 Tex. Jur. 563, Sec. 36.

From these considerations, it follows that no arm, agency or subdivision of the State government, in the absence of specific statutory authority so to do, may exercise the power to close or vacate public roadways within the State.

The Texas Prison Board is a creature of the Legislature and an agency of the State, brought into being under authority of the 1927 amendment to the Constitution authorizing the enactment of legislation for the management and administration of State prisons. Constitution, Art. XVI., Sec. 58; 33 Tex. Jur. 766; Teer v. McGann (Civ. App., Austin, 1933) 65 S. W. (2d)

362.

Any power or authority which such Board has to close or vacate public streets adjacent to the Huntsville Prison and within the City of Huntsville but outside the walls of such prison must appear among the acts of the Legislature.

A careful examination of all statutory provisions pertaining to the Prison System including those prescribing the authority, powers and duties of the Texas Prison Board, reveals the delegation of no such authority to the Board and no provision which by implication includes the requisite power and authority.

Obviously, therefore, if the streets in question are to be legally closed and vacated, such must be done either through action of the Legislature, or by action on the part of some other agency to which such authority has been delegated. County Commissioners' Courts are generally held to have no such jurisdiction over streets within an incorporated city. City of Breckenridge v. Stevens, 40 S. W. (2d) 43, 120 Tex. 318; 39 Tex. Jur. 597, Sec. 58.

The Prison Board, according to your letter, has already appealed to the only other State agency, which might have the requisite power, that is, the City Council of Huntsville. In view of the problems which now confront that body in connection with the Board's appeal, it may not be amiss to discuss briefly herein some of the legal authorities to which the Board may direct the attention of the City Council in furtherance of its application.

Regardless of the quality or quantity of the estate held by a city in its streets, that estate is essentially public and not private property, and a city, in holding it, is the agent and trustee of the public. Industrial Co. v. Tompkins (Civ. App., Amarillo, 1930) 27 S. W. (2d) 343, error refused; 1 McQuillin on Municipal Corporations, 638, Sec. 248 (249).

Generally a street or highway can be vacated only when the proper public authorities determine that it is no longer required for the public use or convenience, and that there is a public necessity for its vacation, or that it is for the public benefit that such action be taken. 13 R. C. L. 68, Sec. 61, and cases cited.

Where the requisite power exists in a municipality, it is for the municipal authorities to determine when it shall be exercised, and their action in this regard will not be reviewed by the courts in the absence of fraud or manifest abuse of discretion or proof that it was done solely for the purpose of promoting a private enterprise. The presumption is that a street or highway was vacated in the interest of the public, and that its vacation was necessary for public purposes; and the burden of showing the contrary is placed upon the persons objecting to the proceeding. Hartwell Iron Works v. Missouri-Kansas-Texas Ry. Co. (Civ. App., Galveston, 1932) 56 S. W. (2d) 922; 13 R. C. L. 70.

"It is now well-settled in Texas that easements over such ways may be either of a public or a private character, and that these two separate and distinct rights may co-exist in contemporaneous and harmonious operation, and the one may be destroyed without necessary impairment of the other - that is, the public authority may vacate and close or relinquish a public easement therein, without impairing the private rights." Simons v. Galveston, H. & S. A. Ry. Co. (Civ. App., Galveston, 1933) 57 S. W. (2d) 199, error dism. See also Dallas Cotton Mills v. Industrial Co. (Com. App., Sec. A, 1927) 296 S. W. 503; Kahn v. City of Houston (Com. App. Sec. B, 1932) 48 S. W. (2d) 595; Bowers v. City of Taylor (Com. App. Sec. B, 1929) 16 S. W. (2d) 520.

Thus, a city ordinance "vacating" a portion of a public street and abandoning all control, jurisdiction, and dominion over it as a public street was held not to show a purpose on the part of the city to physically close the street, and such ordinance was held not to affect private rights in such street but only eliminated the public easement. Dallas Cotton Mills v. Industrial Co. (Com. App., Sec. A, 1927) 296 S. W. 503. See also Simons v. Galveston, H. & S. A. Ry. Co. (Civ. App., Galveston, 1933) 57 S. W. 199, error dism.

"The Commissioners' Court has the right to with-

draw, at any time it saw fit, its control and right to maintain this passageway as a public road, but this right to withdraw maintenance, and the appropriation of public funds therefor, does not carry with it the right to close up a passageway, which a private individual may have acquired by contract." Meyer v. Galveston, H. & S. A. Ry. Co. (Com. App. Sec. B, 1932) 50 S. W. (2d) 268.

These decisions, we believe, establish the proposition that municipal authorities, acting under legislative authority delegated by statute or special charter, have almost unlimited discretion over the purely public easements in public streets. Their action in vacating or eliminating such public easement will not be questioned by the courts in the absence of a showing that they acted fraudulently, capriciously or solely to benefit a private enterprise.

Applying this proposition to the situation presented by your inquiry, the City Council of Huntsville, if it possesses the requisite authority, may by ordinance vacate the public easement in such portions of Twelfth Street and Avenue H, and its discretion in this regard cannot be questioned so long as it makes no attempt to physically close such segments.

Once such segments of these two streets are thus relieved of the public easement, full legal title will ordinarily revert to the abutting owner, being in this instance the Texas Prison System. If, thereafter, the Prison Board determines to physically close such streets, the city may disclaim responsibility for such closing and any claim for damages or injunction would be directed exclusively against such Board. Dallas Cotton Mills v. Industrial Co., (Com. App., Sec. A, 1927) 296 S. W. 503.

Thus, in the recent case of Boyd v. Dillard, et al (Civ. App., Amarillo, 1941) 151 S. W. (2) 847, it was held that "there was no basis for attack upon the good faith of the Commissioners' Court" for vacating a portion of a county road which divided land acquired for park purposes, although complainant might have had a claim for equitable relief or damages against the Parks Board if the physical closing of such street had interfered with any private rights therein.

Let us now examine the question of private rights existing in the portions of the street to be vacated, with the especial object of determining the rights of those land-

owners east of the prison who are protesting against the contemplated action.

The rule is so well settled as to be almost elementary that a private person cannot sue for damages or for an injunction or to abate an encroachment, because of an alleged improper use of a street or an obstruction therein, unless the injury he has sustained is special as distinguished from injuries suffered by the public at large. 4 McQuillin on Municipal Corporations, 187, Sec. 1486 (1382); Hartwell Iron Works v. Missouri-Kansas-Texas Ry. Co. (Civ. App., Galveston, 1932) 56 S. W. (2d) 922.

What situations give rise to such private rights in a vacated public roadway to support a claim of special injury? It is generally held that an abutting owner has such rights and Texas decisions recognize similar rights acquired by contract. 4 McQuillin on Municipal Corporations, 271, Sec. 1522 (1405); Bowers v. Machir (Civ. App., Fort Worth, 1917) 197 S. W. 758.

Our courts have specifically recognized the right in owners of private easements of this nature in public streets to enjoin the physical closing of such streets where payment of adequate compensation has not been made.

Thus, in the case of Industrial Co. v. Tompkins (Civ. App., Amarillo, 1930) 27 S. W. (2d) 343, error refused, the Court states that "where the complaining party owns property abutting on the street but not upon the portion closed, the owner is remitted to an action for his damages, if any. But where he owns property abutting on the closed street", he may enjoin the physical closing of the street.

Similar rights in a purchaser of land according to a recorded plat are recognized in Dallas Cotton Mills v. Industrial Co. (Com. App., Sec. A, 1927) 296 S. W. 503. We quote the following excerpt from the opinion of the Fort Worth Court of Civil Appeals on this question:

"It is well settled by the decisions of this state, and by many other states as well, that where the owner of land lays it out and cuts the same into lots and public streets and alleys, and sells such lots by reference to the plat, the purchasers of such lots acquire as appurtenant thereto the right

to use the streets so dedicated which right is a property right acquired by purchase, and entitled to the same protection as the title to the lots themselves, and the right is not limited to the streets on which the lots of such purchasers are situated." Bowers v. Machir (Civ. App., Fort Worth, 1917) 197 S.W. 758, 760. See, also, Oswald v. Grenet, 22 Tex. 94.

However, one purchasing unplatted acreage in a city without reference to, or reliance upon, an official map or plat of the city or a subdivision thereof, was held to have acquired no private easements in the streets or avenues upon which such acreage did not abut. Lee v. City of Stratford (Com. App., Sec. A, 1935) 81 S. W. (2d) 1003, 125 Tex. 179. The Commission of Appeals in this case also quoted with approval the following excerpt from a noted textbook writer:

"On the other hand, if the street directly in front of one's property is not vacated but the portion vacated is in another block, so that he may use an intersecting cross-street, although perhaps it is not quite so short a way or as convenient, it is almost universally held that he does not suffer such special injury as entitles him to damages. And this is so notwithstanding the new road is less convenient and the diversion of travel depreciates the value of his property. The fact that the lot owner may be inconvenienced or that he may have to go a more roundabout way to reach certain parts, it is generally held, does not bring him an injury different in kind from the general public, but in degree only. 'If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but is only rendered less convenient because of being less direct to other parts of the city, made so by the vacation of the street in another block, such consequence is damnum absque injuria." (Tomaszewski v. Palmer Bee Co., 223 Mich. 565, 194 N. W. 571)." 4 McQuillin on Municipal Corporations, 279, Sec. 1527 (1410).

See, also, Texas Co. et al v. Texarkana Mach. Shops (Civ. App., Texarkana, 1928) 1 S.W. (2d) 928; Simons v. Galveston, H. & S. A. Ry. Co. (Civ. App., Galveston, 1933) 57 S. W. (2d) 199, error dism.; Hartwell v. Missouri-Kansas-Texas Ry. Co. of Texas (Civ.

App. Galveston, 1932) 56 S. W. (2d) 922.

To the same effect is the case of Johnson v. Lancaster (Civ. App., Austin, 1924) 266 S. W. 565, wherein it was held that an incorporated city had authority to "dead-end" a public street by physically closing one end, over the protest of an abutting owner where such closing did not deprive him of his most convenient route to the business district of such city. We find similar holdings in Kahn v. City of Houston, 28 S. W. (2d) 595, 121 Tex. 293 and in Meyer v. Galveston, H. & S. A. Ry. Co. (Com. App., Sec. B, 1932) 50 S. W. (2d) 268.

It is apparent from the facts stated in your inquiry that the property of the persons who are protesting the vacating of such streets does not and cannot abut upon the portions to be closed since the prison property abuts on both sides of such blocks. In the light of the decisions discussed and many other authorities too numerous to mention in this opinion, it would seem that the only basis for injunctive relief or claim for damages would depend upon whether they purchased such property in reliance upon, and by reference to, a map or plat which included and dedicated such street. Your request does not supply us with this information but you can easily obtain it from the County Deed Records.

Before concluding this opinion, it might be well for us to discuss briefly the statutory provisions which bear upon the question of the authority of the City Council of Huntsville to vacate streets.

Prior to the passage of the enabling act to the "Home Rule" amendment to the State Constitution, cities of this State had no such authority except as it was granted by special charter. Constitution, Art. XI., Sec. 5; Acts of 1913, Chapter 147, p. 307; Stevens v. City of Dublin (Civ. App., Fort Worth, 1914) 169 S. W. 188.

That act, the pertinent portion of which now appears as Article 1175 (R. C. S. 1925) authorizes cities having populations in excess of 5,000 inhabitants to adopt or amend their charters to include the power to vacate and close streets. This article reads in part as follows:

"Cities adopting the charter or amendment hereunder shall have full power of local self-

government, and among the other powers that may
be exercised by any such city the following
are hereby enumerated for greater certainty:

"* * *

"18. To control, regulate and remove all ob-
structions or other encroachments or encumbrances on
any public street, alley, or ground, and to narrow,
alter, widen or straighten any such streets, alleys,
avenues or boulevards, and to vacate and abandon
and close any such streets, alleys, avenues or boule-
vards and to regulate and control the moving of
buildings or other structures over and upon the
streets or avenues of such city."

The City of Huntsville, according to both the
1930 and 1940 Federal census, has a population in excess of
5,000. See Texas Almanac p. 109. We do not know, however,
whether that city has adopted or amended its charter in
accordance with the Act of 1913.

According to records of the Secretary of State's
office, the city is still operating under a special charter
granted by the Legislature in 1871. This charter, which
appears in Gammel's Laws, Vol. VI.,p.1410, does not include
specific authority to close and vacate streets and under the
court decisions we have cited in the first portion of
this opinion, such charter would not authorize the city to
close or vacate streets.

The city authorities of Huntsville, of course,
could advise you as to whether the city has adopted a new
charter or amendment to its old charter in accordance with
the provisions of the Acts of 1913.

If the charter under which the city is now
operating does not specifically include the power to close
and vacate public streets, it would seem that the only
avenue open to you is to request the Legislature to provide

for the closing of the streets in question.

Trusting that we have sufficiently answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  Peter Maniscalco
Peter Maniscalco
Assistant

PM:BT

OK DWm

APPROVED AUG 21 1941

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN